IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JERRY PEREZ | § | |
| | § | |
| v. | § | C.A. NO. C-10-001 |
| | § | |
| LIVE OAK COUNTY | § | |

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Pending is Defendant's motion for summary judgment. (D.E. 29). Plaintiff failed to file a response.[1] For the reasons stated herein, Defendant's motion is hereby GRANTED.

**I. JURISDICTION**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. After consent by the parties, (D.E. 16, 22), the case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 23); see also 28 U.S.C. § 636(c).

**II. PROCEDURAL HISTORY**

On December 8, 2009, Plaintiff filed this action in the Western District of Texas, San Antonio Division, naming Live Oak County Jail ("LOCJ") as the defendant. (D.E. 2). The action was transferred to the Southern District of Texas, Corpus Christi Division on January 5, 2010. (D.E. 3, 4, 5); see also 28 U.S.C. § 124(b)(6). A Spears hearing[2] was held on March 9, 2010. At the hearing, Live Oak County was substituted for LOCJ as the defendant on Plaintiff's

---

[1] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996) (testimony given at a Spears hearing is incorporated into the pleadings) (citation omitted).

oral motion. On April 13, 2010, Defendant filed an answer. (D.E. 21). On October 26, 2010, it filed a motion for summary judgment. (D.E. 29).

### III.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that LOCJ officials improperly administered his insulin. (D.E. 2, at 4). In particular, he claims that he requested that his blood sugar be monitored before and after his insulin shots were given and that his request was denied. Id. He further contends that as a result of this oversight he was given too much insulin, resulting in an insulin attack and stroke, which partly paralyzed him, restricted him to a wheelchair, and forced him to undergo therapy. Id.

### IV.  SUMMARY JUDGMENT EVIDENCE

The following facts were established by the records submitted by Defendant or by Plaintiff's testimony at his Spears hearing:

On May 14, 2009, Plaintiff was arrested on two counts of making a false report. (D.E. 29-2, at 51). He was held at LOCJ awaiting disposition of the charges between that date and January 6, 2010, except for a period at San Antonio State Hospital ("SASH") from November 5, 2009 to December 30, 2009. Id.

When Plaintiff was admitted into LOCJ custody, he notified the head jailer that he suffered from diabetes and had been taking insulin for many years. He was not given insulin and became ill with symptoms that included spitting blood, excessive perspiration, confusion, blurred vision, and bloody stool. After officials observed Plaintiff's condition, he was sent to see a doctor in Three Rivers, Texas approximately three months after his admission to LOCJ. The doctor instructed LOCJ that he should be given thirty-five units of insulin every morning and every evening.

LOCJ began administering the insulin to Plaintiff as prescribed by the Three Rivers doctor, but without monitoring his blood sugar before or after the injections. He informed the jail that such testing was important in order to evaluate the effect of the medication and to alter the dosage if needed. LOCJ continued to administer the insulin without determining the level of blood sugar.

On August 25, 2009, Plaintiff filed an inmate request with LOCJ, asking to be given food along with his insulin. (D.E. 29-1, at 44). The response indicates that officers were ordered to provide him with something to eat, or allow him to administer the insulin himself. Id. He filed a second request on September 13, 2009, suggesting that he be allowed to save something from his dinner to eat before receiving his insulin shots. Id. at 48.

On September 16, 2009, Plaintiff filed a grievance complaining that his requests had not been accommodated; he noted that the lack of food caused him to have an insulin attack and possibly a stroke. Id. at 2-3. The chief deputy responded that he had been offered food and refused it. Id. at 3. An October 5, 2009 grievance complained as before that he was not being provided with needed food when his insulin was administered, and added that he was being given excessive dosages and incorrect medication. Id. at 5. The response indicates that LOCJ personnel made inquiries into the complaint. Id. On October 11, 2009, Plaintiff filed a grievance again complaining that he had been given nothing to eat before his insulin was injected. Id. at 6. The chief deputy responded on October 30, 2009, observing that he had been offered a peanut butter sandwich and declined it. Id. at 10.

Plaintiff was confined at SASH for observation and treatment from November 5, 2009 to December 30, 2009. (D.E. 29-2, at 51). On November 31, 2009, he issued a note threatening to

3

commit suicide because his insulin was being withheld from him.  Id. at 24.  A crisis intervention followed, during which he was provided with various coping mechanisms for dealing with his depression.  Id. at 26.  The notes from that intervention reflect that Plaintiff had been denied insulin because of unspecified medical orders.  Id. at 27.  They further include remarks by the responder that Plaintiff mentioned that he had written the suicide note to call attention to the medical problems of others, and because he believed his cell-mate was contemplating self-destructive acts.  Id. at 28.  On December 31, 2009, Plaintiff was released from SASH.  Id. at 33-46.  His discharge documents recommend that he be given follow-up medical attention for his diabetes.  Id. at 38.  They further suggest that he pursue medical treatment for his "many developing needs."  Id. at 41.  The physician at SASH recommended that his insulin shots be reduced to thirty units, and be administered only once a day every evening.  After Plaintiff's release back to LOCJ, he claims he was refused special meals for diabetics, that his complaints were ignored, and that his blood sugar began to rise again as a result.

Throughout the relevant period, a number of different jailers were tasked with administering Plaintiff's insulin.  None of these jailers were licensed to practice medicine as doctors or nurses.  LOCJ has promulgated a written policy requiring it to dispense medicine to its inmates in accordance with the orders of doctors.  Id. at 16.

On January 6, 2010, Plaintiff was convicted of making a false report and sentenced to 180 days in county jail.  Id. at 51.  He has been released and lives in San Antonio.  (D.E. 28).  As a result of his medical problems, he is paralyzed in an arm and a leg and restricted to a wheelchair.  (D.E. 2, at 4).

## V. DISCUSSION

Defendant moves for summary judgment on the grounds that Plaintiff was given proper medical care and that there is no policy exposing Live Oak County to municipal liability. (D.E. 29).

### A. The Standard Of Review For Summary Judgment Motions.

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of

the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.      Summary Judgment Is Not Warranted On The Ground That LOCJ Provided Adequate Medical Care.**

Plaintiff was a pretrial detainee in LOCJ during the incidents which form the basis of his complaint. (D.E. 29-2, at 51). A pretrial detainee may not be punished for a crime for which he has not yet been convicted. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979) (citations omitted). Pretrial detainees held in jail are protected under the Due Process Clause of the Fourteenth Amendment, which mandates that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Id. at 535 (citations omitted).

For a pretrial detainee, the § 1983 analysis depends upon whether the claim is classified as a challenge to conditions of confinement or to an "episodic act or omission." Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (citation omitted). "A 'conditions of confinement' case is a '[c]onstitutional attack[] on general conditions, practices, rules, or restrictions of pretrial confinement.'" Id. (citation omitted). In that type of case, a constitutional violation exists only if the condition "is not reasonably related to a legitimate, non-punitive governmental objective." Id. (citation omitted). In contrast, where the harm is a particular act or omission by one or more officials, the case is characterized as an "episodic act or omission case" and is reviewed under a subjective deliberate indifference standard. Id. at 53-54; see also

Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).

In order to properly characterize a claim as attacking conditions of confinement, "a jailer's act or omission must implement a rule or restriction or otherwise demonstrate the existence of an identifiable intended condition or practice." Hare v. City of Corinth, Miss., 74 F.3d 633, 645 (5th Cir. 1996) (en banc). Failing such a showing, a plaintiff "must show that the jail official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id.

Defendant believes that Plaintiff's claim is properly characterized as an attack on "episodic acts or omissions." (D.E. 29, at 7). Evidently, it bases this view on its understanding of the complaint as essentially resting on allegations that he was denied food with his medication and at times denied insulin altogether. Id. Defendant misreads the complaint.

Although Plaintiff voiced these concerns in his grievances, and alluded to them at his Spears hearing, they do not form the basis of this action. On the contrary, he clearly states there that he believes his constitutional rights were violated because his blood sugar level was never properly assessed while at LOCJ, that he was given excessive dosages of insulin as a result, and that he suffered a stroke and is now in a wheelchair because of that error. (D.E. 2, at 4). Defendant nowhere addresses this lack of testing, despite the fact that it represents the fundamental target of Plaintiff's attack. Even more surprisingly, it construes the complaint as hinging on a deprivation of insulin, when Plaintiff is in fact making the exact opposite claim: that he was given too much. Id. Indeed, although he has referenced issues with the provision of food, he does not assert in his complaint that such issues gave rise to his injury. By contrast, he

draws a sharp connection between the absence of blood sugar testing, the administering of an overly large amount of insulin, and his subsequent stroke and paralysis. Id.

Defendant is correct that a claim focused on the availability of food during the administering of insulin, or on the deprivation of insulin, would be properly categorized as an "episodic acts or omissions" complaint. See Abshure v. Prator, No. 09-30895, 2010 WL 3278256, at *2 n.1 (5th Cir. Aug. 16, 2010) (per curiam) (unpublished) (treating the denial of insulin to a diabetic pretrial detainee as an episodic act or omission); see also Montalvo v. Williams, No. 97-41340, 1998 WL 858830, at *1 (5th Cir. Nov. 20, 1998) (per curiam) (unpublished) (treating infrequent denial of insulin shots as a deliberate indifference claim). This is especially true in light of the evidence in the record suggesting that insulin was in fact routinely administered to Plaintiff, and food was at least sometimes made available. (D.E. 29-1, at 3, 5, 10).

It is less clear, however, that Plaintiff's actual claim–that his blood sugar was never evaluated and that he was given too much insulin as a result–falls into the same category. Defendant has not disputed his assertion that his blood sugar was never tested while at LOCJ, nor has it submitted any medical records indicating otherwise. If Plaintiff was never tested in order to ascertain the adequacy of the treatment, it is difficult to see how such an absence would not constitute the sort of omission "typical of extended or pervasive misconduct by other officials" and strongly suggestive of "an intended condition or practice." Hare, 74 F.3d at 645.

A conditions of confinement case can be made out when the general practices of jail officials engender harm to inmates, even where there is an immediate causal relationship between particular acts or omissions and the injury suffered. Shepherd v. Dallas Cnty., 591 F.3d

445, 453 (5th Cir. 2009) (deeming a pretrial detainee's civil rights claim to implicate conditions of confinement where he "relied on evidence showing that the inadequate treatment he received [including lack of monitoring and problems with the administering of medication] in a series of interactions with the jail's medical system inevitably led to his suffering a stroke"); but see Scott, 114 F.3d at 53 (suggesting that a claim can only qualify as attacking conditions of confinement where the conditions themselves constitute the harm complained of); Anderson v. Dallas Cnty., 286 F. App'x 850, 859 (5th Cir. 2008) (per curiam) (unpublished) ("Because the plaintiff[] cannot prove that [he] was subjected to cruel and unusual punishment without first proving that a state actor deprived him of his constitutional rights, [his] case is an episodic-act-or-omission case.").

      Plaintiff complained that he was being given an excessive amount of insulin on October 5, 2009. (D.E. 29-1, at 5). LOCJ authorities responded that the complaint was being reviewed. Id. Plaintiff alleges that no effort was made to test his blood sugar level after this complaint was filed, and that his shots continued to carry too much insulin as a result. Defendant has not disputed his account. These claims are too similar to those made in Shepherd to regard them as anything other than an attack on his conditions of confinement. 591 F.3d at 453.

      In Plaintiff's complaint, he also raises a conditions of confinement claim based on his assertion that medical care is not available at LOCJ at all. The allegation that he was sent to another facility to be diagnosed, and only after several months of insulin deprivation made him extremely ill, indicates that basic medical treatment may not be accessible to detainees at LOCJ. Defendant has not disputed this narrative. Such an absence of medical attention would be part of the broader deficiencies which Plaintiff argues led to his injuries. These allegations further

support the likelihood that his action should be regarded as focused on conditions of confinement, rather than episodic acts or omissions, with the incumbent different standard.

As a conditions of confinement case, this action addresses the issue of whether the lack of blood level testing for diabetic detainees at LOCJ is "reasonably related to a legitimate, non-punitive governmental objective." Scott, 114 F.3d at 53. Defendant has not addressed this question, instead analyzing the complaint under the deliberate indifference rubric. (D.E. 29, at 7). The Fifth Circuit has noted that the "reasonable relationship" inquiry is "functionally equivalent" to the deliberate indifference inquiry. Hare, 74 F.3d at 643. However, it has also intimated that different kinds of judicial approaches are mandated depending on which category a claim falls under. In Shepherd, the district court denied the defendant's motion for summary judgment, interpreting Hare to require an "independent inquiry into the Jail officials' state of mind" in episodic cases, and an analysis of the legitimacy of governmental objectives in conditions of confinement cases. Shepherd v. Dallas Cnty, No. 3:05-CV-1442-D, 2008 WL 656889, at *4 (N.D. Tex. Mar. 6, 2008) (unpublished) (citation omitted). The Fifth Circuit endorsed a portion of the jury instructions that incorporated this reading of Hare. Shepherd, 591 F.3d at 455. Defendant has provided no justification for denying diabetic inmates blood sugar testing. Consequently, it has failed to meet the burden required in conditions of confinement cases and is not entitled to summary judgment on that ground.

Finally, even assuming arguendo that deliberate indifference is the appropriate standard–either because Plaintiff's claim is episodic or because the reasonable relationship test is identical to the deliberate indifference test–Defendant still fails to meet its burden. For it completely neglects to respond to the allegations central to Plaintiff's claims. Indeed, it omits

reference to blood sugar testing and excessive dosages not only in its argument section, but in its fact section as well. (D.E. 29, at 4-5). This failure leaves important questions unanswered and thereby fatally impairs that section of the motion for summary judgment. See generally Rouse v. Plantier, 182 F.3d 192, 198-99 (3d Cir. 1999) (Alito, J.) (noting that constitutional issues can be raised where prisons fail to monitor blood sugar levels of certain groups of diabetics). Because there is insufficient evidence in the record to determine or apply the proper legal standard, and because Defendant has not responded to the complaint's factual allegations, there is a fact issue on the adequacy of the medical care that was provided to Plaintiff and LOCJ is not entitled to summary judgment on that ground.

## C. Plaintiff Has Not Sufficiently Established Municipal Liability To Survive Summary Judgment.

For a municipality to be liable pursuant to § 1983, there must be: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Piotrowski, 237 F.3d at 578; accord Kemppainen v. Aransas County Detention Center, 626 F. Supp. 2d 672, 677 (S.D. Tex. 2009).

The Fifth Circuit has announced that "[a]n official policy for § 1983 purposes may be either a written policy or 'a persistent widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" Lawson v. Dallas

Cnty., 286 F.3d 257, 263 (5th Cir. 2002) (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)); accord Kemppainen, 626 F. Supp. 2d at 677. There must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right. Id. An isolated incident is insufficient to show a custom. Bennett v. City of Slidell, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc) (citations omitted); accord Kemppainen, 626 F. Supp. 2d at 677.

Although they involve similar legal questions, more evidence–and more concrete evidence–of widespread misconduct is required of a prisoner seeking to demonstrate municipal liability in a § 1983 action than is required in qualifying the action as a conditions of confinement case. In particular, the latter task requires only that the defendant's conduct be "typical of extended or pervasive misconduct by other officials." Hare, 74 F.3d at 645 (emphasis added). By contrast, municipal liability flows only from an actual written policy or an actual widespread practice. Lawson, 286 F.3d at 263. Plaintiff's complaint meets the first bar but not the second.

Defendant avers that Plaintiff has not brought forth evidence of an LOCJ policy responsible for his alleged injury. (D.E. 29, at 8). It is correct. He has not demonstrated that Defendant has implemented a policy or widespread practice responsible for his injury. A review of the record reveals no indication of any such policy or practice. "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." McConney v. City of Houston, 863 F.2d 1180, 1184 n.2 (5th Cir. 1989) (citation omitted). Plaintiff has not met that burden. Because he has named only Live Oak County as a defendant, and because he has pointed to no evidence of any relevant policy or

practice, he fails to establish municipal liability and his action must be dismissed.

## VI.  CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment, (D.E. 29), is hereby granted and this action is dismissed.

ORDERED this 6th day of December 2010.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE